## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

SAGAR LALCHAND YADAV,

     Plaintiff,

-vs-                   CASE NO.

EQUIFAX INFORMATION
SERVICES LLC, TRANS UNION
LLC, and NATIONAL CREDIT
SYSTEMS, INC.,

     Defendants.

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, SAGAR LALCHAND YADAV (hereinafter "Plaintiff"), by and through his undersigned counsel, for his cause of action against Defendants, EQUIFAX INFORMATION SERVICES LLC (hereinafter "Equifax"), TRANS UNION LLC (hereinafter "Trans Union"), and NATIONAL CREDIT SYSTEMS, INC. (hereinafter "NCS") (hereinafter collectively "Defendants"), and in support thereof respectfully alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq* and Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. § 1692 *et seq*.

## PRELIMINARY STATEMENT

1.    This is an action for actual damages, statutory damages, punitive damages, costs, and attorney's fees brought pursuant to the FCRA.

1

2.      This is an action for actual damages, statutory damages, compensatory damages, punitive damages, costs, and attorney's fees brought pursuant to the FDCPA.

3.      Today in America there are three major consumer reporting agencies, Equifax Information Services LLC (hereinafter "Equifax"), Trans Union LLC (hereinafter "Trans Union"), and Experian Information Solutions, Inc. (hereinafter "Experian") (hereinafter collectively "CRAs").

4.      Consumer reporting agencies that create consumer reports, like Equifax and Trans Union, are charged with using reasonable procedures designed to ensure the maximum possible accuracy of the information they report. It is not enough for them to simply parrot information they receive from entities, particularly where a consumer makes a dispute about information reported.

5.      When a consumer, like Plaintiff, disputes information through the CRAs, those disputes are transmitted to the party furnishing the information. The FCRA demands that each party separately conduct a reasonable investigation of the consumer's dispute and correct or delete information they learn to be inaccurate or cannot otherwise verify.

6.      The Consumer Financial Protection Bureau has noted, "experience indicates that [CRAs] lack incentives and under-invest in accuracy" Consumer Fin.

Prot. Bureau, Supervisory Highlights Consumer Reporting Special Edition 21 (Issue 14, March 2, 2017).

## JURSIDICATION, VENUE, AND PARTIES

7.     The jurisdiction for this Court is conferred by 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

8.     Venue is proper for this Court pursuant to 28 U.S.C. § 1391(b)(2), as this is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

9.     Venue is proper in this District as Plaintiff is a natural person and resident of Miami-Dade County, Florida; Defendants transact business within this District; and a substantial portion of the violations described in this Complaint occurred in this District.

10.     Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

11.     Equifax is a corporation with its principal place of business in the State of Georgia and is authorized to do business in the State of Florida through its registered agent, Corporation Service Company, located at 1201 Hays Street, Tallahassee, Florida 32301.

12.     Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f). Equifax is regularly engaged in the business of assembling, evaluating and

3

disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties.

13.   Equifax disburses such consumer reports to third parties under contract for monetary compensation.

14.   Trans Union is a corporation with its principal place of business in the State of Illinois and is authorized to do business in the State of Florida through its registered agent, Corporation Service Company, located at 1201 Hays Street, Tallahassee, Florida 32301.

15.   Trans Union is a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f). Trans Union is regularly engaged in the business of assembling, evaluating and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties.

16.   Trans Union disburses such consumer reports to third parties under contract for monetary compensation.

17.   NCS is a corporation with its principal place of business in the State of Georgia and is authorized to do business in the State of Florida through its registered agent, C T Corporation System, located at 1200 South Pine Island Road, Plantation, Florida 33324.

18.   NCS is a "furnisher of information" as that term is used in 15 U.S.C § 1681s-2.

19.     NCS is a "debt collector" as defined by 15 U.S.C. § 1692a(6). Upon information and belief, NCS is regularly engaged in the business of collecting or attempting to collect debts owed or due or asserted to be owed or due another.

20.     NCS furnished information about Plaintiff to Equifax and Trans Union that was inaccurate.

## FACTUAL ALLEGATIONS

21.     Plaintiff is alleged to owe a debt to NCS, partial account number ending in x7907, as to a collection account on behalf of original creditor One Zero Nine Tower Apts (hereinafter "NCS Account"). Plaintiff does not have an account with and never lived at One Zero Nine Tower Apts, and Plaintiff never applied or gave permission to anyone to apply using his information for the NCS Account.

22.     On or about December 15, 2023, Plaintiff received a phone call from NCS attempting to collect the NCS Account.

23.     On or about December 18, 2023, Plaintiff received a collection letter from NCS seeking to collect a balance in the amount of $2,524.53.

24.     Shortly thereafter, Plaintiff contacted NCS to request additional information and received a debt validation which stated the outstanding balance was regarding a lease for an apartment located in Oxford, Mississippi. Plaintiff has never lived in Mississippi.

25.     On or about February 2, 2024, Plaintiff received a phone call from NCS attempting to collect the NCS Account.

26.     In or about February 2024, Plaintiff reviewed his credit reports and observed that the NCS Account was being reported to his credit file.

27.     Shortly thereafter, Plaintiff contacted Equifax and Trans Union to dispute the erroneous NCS Account and advised the NCS Account did not belong to him.

28.     Plaintiff did not receive dispute results from Equifax. However, upon review of an updated credit report, Plaintiff observed the NCS Account continued to be reported with a comment which stated, "consumer disputes this account information".

29.     Equifax failed to do any independent investigation into Plaintiff's dispute, but rather parroted information it received from the furnisher.

30.     Equifax never attempted to contact Plaintiff during the alleged investigation.

31.     Upon information and belief, Equifax notified NCS of Plaintiff's dispute. However, NCS failed to conduct a reasonable investigation and merely compared its own erroneous data to that provided by Equifax in connection with the dispute investigation.

32.     Plaintiff did not receive dispute results from Trans Union. However, upon review of an updated credit report, Plaintiff observed the NCS Account continued to be reported with a comment which stated, "account information disputed by consumer, meets FCRA requirements".

33.     Trans Union failed to do any independent investigation into Plaintiff's dispute, but rather parroted information it received from the furnisher.

34.     Trans Union never attempted to contact Plaintiff during the alleged investigation.

35.     Upon information and belief, Trans Union notified NCS of Plaintiff's dispute. However, NCS failed to conduct a reasonable investigation and merely compared its own erroneous data to that provided by Trans Union in connection with the dispute investigation.

36.      On or about February 8, 2024, Plaintiff contacted NCS to dispute the erroneous NCS Account and explained the account did not belong to him and that he has never been to or lived in Mississippi.

37.     On or about February 9, 2024, Plaintiff received another collection letter from NCS seeking to collect a debt in the amount of $2,524.53.

38.     On that same day, February 9, 2024, Plaintiff also received another phone call from NCS attempting to collect the NCS Account.

39.     On or about February 22, 2024, Plaintiff obtained copies of his Equifax and Trans Union credit reports. Upon review, Plaintiff observed the NCS Account continued to appear with a balance of $2,524.

40.     On or about February 27, 2024, Plaintiff filed a Federal Trade Commission ("FTC") Identity Theft Report, report number 169923919. In this report, he explained that he was a victim of identity theft and that the NCS Account had been opened under his name and was listed in his credit report.

41.     Due to the continued inaccurate reporting, on or about March 11, 2024, Plaintiff mailed detailed written dispute letters to Equifax and Trans Union. In the letter, Plaintiff explained he did not open or authorize the NCS Account, he did not owe the outstanding balance, and the NCS Account did not belong to him. In the letter, Plaintiff included an image of his state identification card and Social Security card as proof of identity. Plaintiff also included images of the erroneous reporting, images of the filed FTC Identity Theft Report, images of the collection letters and debt verification received, and other supporting documents.

42.     Plaintiff mailed his detailed dispute letters via USPS Certified Mail to Equifax (9214 8901 4298 0495 9601 63) and Trans Union (9214 8901 4298 0495 9601 56).

43.     On or about March 15, 2024, Plaintiff received yet another phone call from NCS attempting to collect the NCS Account.

44.     On or about March 20, 2024, Plaintiff received an online response from Trans Union which stated, "it didn't appear that you or a properly authorized third party sent it to us".

45.     On or about March 22, 2024, Plaintiff submitted his detailed dispute letter online to Trans Union.

46.     On or about April 17, 2024, Plaintiff received dispute results from Trans Union which stated the NCS Account was deleted.

47.     Despite confirmation of delivery on March 18, 2024, Plaintiff did not receive dispute results in the mail from Equifax.

48.     On or about April 17, 2024, Plaintiff called Equifax and spoke to representative "Sam" who stated the NCS Account was verified as accurate.

49.     That same day, Plaintiff reviewed a copy of his Equifax credit report and observed the erroneous NCS Account continued to be reported with a balance of $2,524 and with a comment which stated, "consumer disputes this information".

50.     Equifax failed to do any independent investigation into Plaintiff's dispute, but rather parroted information it received from the furnisher.

51.     Equifax never attempted to contact Plaintiff during the alleged investigation.

52.     Upon information and belief, Equifax notified NCS of Plaintiff's dispute. However, NCS failed to conduct a reasonable investigation and merely

compared its own erroneous data to that provided by Equifax in connection with the dispute investigation.

53.    Despite Plaintiff's best efforts to have the erroneous account removed, Equifax continued to report the fraudulent and unauthorized NCS Account to Plaintiff's credit file. Accordingly, Plaintiff's damages are ongoing as of the filing of this Complaint.

54.    Equifax has not conducted an actual investigation despite Plaintiff's pleas, and upon information and belief, simply continues to parrot off the back of the furnisher.

55.    Plaintiff continues to suffer as of the filing of this Complaint with Defendants' reluctance to conduct a thorough investigation into her disputes or otherwise make his credit file accurate.

56.    To date, Plaintiff has received at least six (6) total communications from NCS attempting to collect a debt.

57.    NCS was attempting to collect from Plaintiff a debt that did not belong to him.

58.    NCS was attempted to collect a debt that was illegitimate.

59.    As a result of the inaccurate credit reporting, Plaintiff has suffered damages, including, but not limited to:

i.   Monies lost by attempting to fix his credit. Plaintiff has suffered actual damages in postage paid, wasted ink and paper, and wasted time;

ii.   Loss of time attempting to cure the error;

iii.   Mental anguish, added stress, aggravation, embarrassment, sleepless nights, and other related impairments to the enjoyment of life. Plaintiff is being physically affected by Defendants' reluctance to fix the error;

iv.   Reduction in credit score;

v.   Loss of the ability to benefit from lower interest rates; and

vi.   Apprehensiveness to apply for credit due to the fear of rejection.

**CAUSES OF ACTION**

**COUNT I**
**Violation of 15 U.S.C. § 1681e(b)**
**as to Defendant, Equifax Information Services LLC (Negligent)**

60.   Plaintiff re-alleges and reincorporates paragraphs one (1) through fifty-nine (59) as if fully stated herein.

61.   Equifax violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning Plaintiff.

11

62.     Equifax allowed for a Furnisher to report inaccurate information on an account.

63.     Upon information and belief, Equifax prevents its agents from calling consumers, like Plaintiff, during the dispute process or from calling witnesses with knowledge about the dispute.

64.     Equifax violated its own policies and procedures by not deleting an account when Plaintiff provided them with the filed FTC Identity Theft Report, which contained sworn testimony of the fraud.

65.     As a result of this conduct, action, and/or inaction of Equifax, Plaintiff suffered damages, including without limitation, loss of the ability to benefit from lower interest rates; reduction in credit score; loss of time; financial loss; mental and emotional pain stemming from the anguish, humiliation, and apprehension in applying for credit; and the damages otherwise outlined in this Complaint.

66.     The conduct, action, and/or inaction of Equifax was negligent, rendering it liable for actual damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

67.     Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff, SAGAR LALCHAND YADAV, respectfully requests that this Court award actual damages against Defendant, EQUIFAX

INFORMATION SERVICES LLC; award Plaintiff his attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; and such other such relief the Court may deem just and proper.

### COUNT II
**Violation of 15 U.S.C. § 1681e(b)**
**as to Defendant, Equifax Information Services LLC (Willful)**

68.     Plaintiff re-alleges and reincorporates paragraphs one (1) through fifty-nine (59) as if fully stated herein.

69.     Equifax violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning Plaintiff.

70.     Equifax allowed for a Furnisher to report inaccurate information on an account.

71.     Upon information and belief, Equifax prevents its agents from calling consumers, like Plaintiff, during the dispute process or from calling witnesses with knowledge about the dispute.

72.     Equifax violated its own policies and procedures by not deleting an account when Plaintiff provided them with the filed FTC Identity Theft Report, which contained sworn testimony of the fraud.

73.     As a result of this conduct, action, and/or inaction of Equifax, Plaintiff suffered damages, including without limitation, loss of the ability to benefit from lower interest rates; reduction in credit score; loss of time; financial loss; mental and emotional pain stemming from the anguish, humiliation, and apprehension in applying for credit; and the damages otherwise outlined in this Complaint.

74.     The conduct, action, and/or inaction of Equifax was willful, rendering it liable for actual or statutory damages and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

75.     Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff, SAGAR LALCHAND YADAV, respectfully requests that this Court award actual or statutory damages and punitive damages against Defendant, EQUIFAX INFORMATION SERVICES LLC; award Plaintiff his attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; and such other such relief the Court may deem just and proper.

## COUNT III
### Violation of 15 U.S.C. § 1681i
### as to Defendant, Equifax Information Services LLC (Negligent)

76.     Plaintiff re-alleges and reincorporates paragraphs one (1) through fifty-nine (59) as if fully stated herein.

14

77.     After receiving Plaintiff's disputes, Equifax violated 15 U.S.C. § 1681i by: (1) failing to delete inaccurate information in Plaintiff's credit file after receiving notice of such inaccuracies; (2) failing to conduct a lawful reinvestigation; (3) failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file, and (4) relying upon verification from a source it has to know is unreliable.

78.     Despite the large amount of information and documentation produced by Plaintiff demonstrating the fraudulent reporting, upon information and belief, Equifax refused to conduct any independent investigations into Plaintiff's disputes and simply transferred the duty to investigate to the furnisher(s).

79.     As a result of this conduct, action, and/or inaction of Equifax, Plaintiff suffered damages, including without limitation, loss of the ability to benefit from lower interest rates; reduction in credit score; loss of time; financial loss; mental and emotional pain stemming from the anguish, humiliation, and apprehension in applying for credit; and the damages otherwise outlined in this Complaint.

80.     The conduct, action, and/or inaction of Equifax was negligent, rendering it liable for actual damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

81.     Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff, SAGAR LALCHAND YADAV, respectfully requests that this Court award actual damages against Defendant, EQUIFAX INFORMATION SERVICES LLC; award Plaintiff his attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; and such other such relief the Court may deem just and proper.

<u>**COUNT IV**</u>
**Violation of 15 U.S.C. § 1681i**
**as to Defendant, Equifax Information Services LLC (Willful)**

82.     Plaintiff re-alleges and reincorporates paragraphs one (1) through fifty-nine (59) as if fully stated herein.

83.     After receiving Plaintiff's disputes, Equifax violated 15 U.S.C. § 1681i by: (1) failing to delete inaccurate information in Plaintiff's credit file after receiving notice of such inaccuracies; (2) failing to conduct a lawful reinvestigation; (3) failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file, and (4) relying upon verification from a source it has to know is unreliable.

84.     Despite the large amount of information and documentation produced by Plaintiff demonstrating the fraudulent reporting, upon information and belief, Equifax refused to conduct any independent investigations into Plaintiff's disputes and simply transferred the duty to investigate to the furnisher(s).

16

85.     As a result of this conduct, action, and/or inaction of Equifax, Plaintiff suffered damages, including without limitation, loss of the ability to benefit from lower interest rates; reduction in credit score; loss of time; financial loss; mental and emotional pain stemming from the anguish, humiliation, and apprehension in applying for credit; and the damages otherwise outlined in this Complaint.

86.     The conduct, action, and/or inaction of Equifax was willful, rendering it liable for actual or statutory damages and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

87.     Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff, SAGAR LALCHAND YADAV, respectfully requests that this Court award actual or statutory damages and punitive damages against Defendant, EQUIFAX INFORMATION SERVICES LLC; award Plaintiff his attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; and such other such relief the Court may deem just and proper.

### COUNT V
### Violation of 15 U.S.C. § 1681e(b)
### as to Defendant, Trans Union LLC (Negligent)

88.     Plaintiff re-alleges and reincorporates paragraphs one (1) through fifty-nine (59) as if fully stated herein.

89.    Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning Plaintiff.

90.    Trans Union allowed for a Furnisher to report inaccurate information on an account.

91.    Upon information and belief, Trans Union prevents its agents from calling consumers, like Plaintiff, during the dispute process or from calling witnesses with knowledge about the dispute.

92.    As a result of this conduct, action, and/or inaction of Trans Union, Plaintiff suffered damages, including without limitation, loss of the ability to benefit from lower interest rates; reduction in credit score; loss of time; financial loss; mental and emotional pain stemming from the anguish, humiliation, and apprehension in applying for credit; and the damages otherwise outlined in this Complaint.

93.    The conduct, action, and/or inaction of Trans Union was negligent, rendering it liable for actual damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

94.    Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff, SAGAR LALCHAND YADAV, respectfully requests that this Court award actual damages against Defendant, TRANS UNION LLC; award Plaintiff his attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; and such other such relief the Court may deem just and proper.

## COUNT VI
### Violation of 15 U.S.C. § 1681e(b)
### as to Defendant, Trans Union LLC (Willful)

95.   Plaintiff re-alleges and reincorporates paragraphs one (1) through fifty-nine (59) as if fully stated herein.

96.   Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning Plaintiff.

97.   Trans Union allowed for a Furnisher to report inaccurate information on an account.

98.   Upon information and belief, Trans Union prevents its agents from calling consumers, like Plaintiff, during the dispute process or from calling witnesses with knowledge about the dispute.

99.   As a result of this conduct, action, and/or inaction of Trans Union, Plaintiff suffered damages, including without limitation, loss of the ability to benefit

from lower interest rates; reduction in credit score; loss of time; financial loss; mental and emotional pain stemming from the anguish, humiliation, and apprehension in applying for credit; and the damages otherwise outlined in this Complaint.

100.   The conduct, action, and/or inaction of Trans Union was willful, rendering it liable for actual or statutory damages and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

101.   Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff, SAGAR LALCHAND YADAV, respectfully requests that this Court award actual or statutory damages and punitive damages against Defendant, TRANS UNION LLC; award Plaintiff his attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; and such other such relief the Court may deem just and proper.

**<u>COUNT VII</u>**
**Violation of 15 U.S.C. § 1681i**
**as to Defendant, Trans Union LLC (Negligent)**

102.   Plaintiff re-alleges and reincorporates paragraphs one (1) through fifty-nine (59) as if fully stated herein.

103.   After receiving Plaintiff's disputes, Trans Union violated 15 U.S.C. § 1681i by: (1) failing to delete inaccurate information in Plaintiff's credit file after

receiving notice of such inaccuracies; (2) failing to conduct a lawful reinvestigation; (3) failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file, and (4) relying upon verification from a source it has to know is unreliable.

104.   Despite the large amount of information and documentation produced by Plaintiff demonstrating the fraudulent reporting, upon information and belief, Trans Union refused to conduct any independent investigations into Plaintiff's disputes and simply transferred the duty to investigate to the furnisher(s).

105.   As a result of this conduct, action, and/or inaction of Trans Union, Plaintiff suffered damages, including without limitation, loss of the ability to benefit from lower interest rates; reduction in credit score; loss of time; financial loss; mental and emotional pain stemming from the anguish, humiliation, and apprehension in applying for credit; and the damages otherwise outlined in this Complaint.

106.   The conduct, action, and/or inaction of Trans Union was negligent, rendering it liable for actual damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

107.   Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff, SAGAR LALCHAND YADAV, respectfully requests that this Court award actual damages against Defendant, TRANS UNION LLC; award Plaintiff his attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; and such other such relief the Court may deem just and proper.

**COUNT VIII**
**Violation of 15 U.S.C. § 1681i**
**as to Defendant, Trans Union LLC (Willful)**

108.   Plaintiff re-alleges and reincorporates paragraphs one (1) through fifty-nine (59) as if fully stated herein.

109.   After receiving Plaintiff's disputes, Trans Union violated 15 U.S.C. § 1681i by: (1) failing to delete inaccurate information in Plaintiff's credit file after receiving notice of such inaccuracies; (2) failing to conduct a lawful reinvestigation; (3) failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file, and (4) relying upon verification from a source it has to know is unreliable.

110.   Despite the large amount of information and documentation produced by Plaintiff demonstrating the fraudulent reporting, upon information and belief, Trans Union refused to conduct any independent investigations into Plaintiff's disputes and simply transferred the duty to investigate to the furnisher(s).

111.   As a result of this conduct, action, and/or inaction of Trans Union, Plaintiff suffered damages, including without limitation, loss of the ability to benefit from lower interest rates; reduction in credit score; loss of time; financial loss; mental and emotional pain stemming from the anguish, humiliation, and apprehension in applying for credit; and the damages otherwise outlined in this Complaint.

112.   The conduct, action, and/or inaction of Trans Union was willful, rendering it liable for actual or statutory damages and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

113.   Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff, SAGAR LALCHAND YADAV, respectfully requests that this Court award actual or statutory damages and punitive damages against Defendant, TRANS UNION LLC; award Plaintiff his attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; and such other such relief the Court may deem just and proper.

## <u>COUNT IX</u>
### Violation of 15 U.S.C. § 1681s-2(b)
### as to Defendant, National Credit Systems, Inc. (Negligent)

114.   Plaintiff re-alleges and reincorporates paragraphs one (1) through fifty-nine (59) as if fully stated herein.

115.   NCS furnished inaccurate account information to Equifax and Trans Union, and through those CRAs to all of Plaintiff's potential lenders.

116.   After receiving Plaintiff's disputes, NCS violated 15 U.S.C. § 1681s-2(b) by (1) failing to fully and properly investigate Plaintiff's dispute of the account; (2) failing to review all relevant information regarding same; (3) failing to accurately respond to the CRAs; and (4) failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the representations to the consumer reporting agency.

117.   Plaintiff provided all the relevant information and documents necessary for NCS to have identified that the account was fraudulent.

118.   NCS did not have any reasonable basis to believe that Plaintiff was responsible for the account reported in its representations. It also had sufficient evidence by which to have verified that Plaintiff was not the responsible party, including information provided to NCS by Plaintiff in connection with his disputes of the account in question. Instead, it knowingly chose to follow procedures which did not review, confirm, or verify the account belonged to Plaintiff. Further, even if it would attempt to plead ignorance, it had the evidence and information with which to confirm and recognize that Plaintiff was a victim of identity theft.

119.   NCS violated 15 U.S.C. § 1681s-2(b) by continuing to furnish inaccurate information to the CRAs after it had been notified that the information it was furnishing was inaccurate.

120.   As a direct result of this conduct, action and/or inaction of NCS, Plaintiff suffered damages, including without limitation, by loss of the ability to benefit from lower interest rates; loss of time; financial loss; and mental and emotional pain stemming from the anguish, humiliation, and apprehension in applying for credit, and the damages otherwise outlined in this Complaint.

121.   The conduct, action, and inaction of NCS was negligent, rendering it liable for actual damages, in an amount to be determined by the Court pursuant to 15 USC § 1681o.

122.   Plaintiff is entitled to recover costs and attorney's fees from NCS in an amount to be determined by the Court pursuant to 15 USC § 1681o.

WHEREFORE Plaintiff, SAGAR LALCHAND YADAV, respectfully requests that this Court award actual damages against Defendant, NATIONAL CREDIT SYSTEMS, INC., jointly and severally; award Plaintiff his attorneys' fees and costs; award pre-judgment and post-judgment interest at the legal rate; and grant all such additional relief as the Court deems appropriate.

### COUNT X
### Violation of 15 U.S.C. § 1681s-2(b)
### as to Defendant, National Credit Systems, Inc. (Willful)

123.   Plaintiff re-alleges and reincorporates paragraphs one (1) through fifty-nine (59) as if fully stated herein.

124.   NCS furnished inaccurate account information to Equifax and Trans Union, and through those CRAs to all of Plaintiff's potential lenders.

125.   After receiving Plaintiff's disputes, NCS violated 15 U.S.C. § 1681s-2(b) by (1) failing to fully and properly investigate Plaintiff's dispute of the account; (2) failing to review all relevant information regarding same; (3) failing to accurately respond to the CRAs; and (4) failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the representations to the consumer reporting agency.

126.   Plaintiff provided all the relevant information and documents necessary for NCS to have identified that the account was fraudulent.

127.   NCS did not have any reasonable basis to believe that Plaintiff was responsible for the account reported in its representations. It also had sufficient evidence by which to have verified that Plaintiff was not the responsible party, including information provided to NCS by Plaintiff in connection with his disputes of the account in question. Instead, it knowingly chose to follow procedures which did not review, confirm, or verify the account belonged to Plaintiff. Further, even if it would attempt to plead ignorance, it had the evidence and information with which to confirm and recognize that Plaintiff was a victim of identity theft.

128.   NCS violated 15 U.S.C. § 1681s-2(b) by continuing to furnish inaccurate information to the CRAs after it had been notified that the information it was furnishing was inaccurate.

129.   As a direct result of this conduct, action and/or inaction of NCS, Plaintiff suffered damages, including without limitation, by loss of the ability to benefit from lower interest rates; loss of time; financial loss; and mental and emotional pain stemming from the anguish, humiliation, and apprehension in applying for credit, and the damages otherwise outlined in this Complaint.

130.   The conduct, action, and inaction of NCS was willful, rendering it liable for actual or statutory damages and punitive damages, in an amount to be determined by the Court pursuant to 15 USC § 1681n.

131.   Plaintiff is entitled to recover costs and attorney's fees from NCS in an amount to be determined by the Court pursuant to 15 USC § 1681n.

WHEREFORE Plaintiff, SAGAR LALCHAND YADAV, respectfully requests that this Court award actual or statutory damages and punitive damages against Defendant, NATIONAL CREDIT SYSTEMS, INC., jointly and severally; award Plaintiff his attorneys' fees and costs; award pre-judgment and post-judgment interest at the legal rate; and grant all such additional relief as the Court deems appropriate.

27

## <u>COUNT XI</u>
## Violation of 15 U.S.C. § 1692f(1)
## as to Defendant, National Credit Systems, Inc.

132.   Plaintiff re-alleges and reincorporates paragraphs one (1) through fifty-nine (59) as if fully stated herein.

133.   NCS has repeatedly attempted to collect a debt from Plaintiff that it knew or had reason to know was illegitimate.

134.   NCS violated 15 U.S.C. § 1692f(1) by attempting to collect a debt not authorized by agreement or otherwise permitted by law.

135.   NCS had all the information it needed to determine that the debt did not belong to Plaintiff, yet repeatedly attempted to collect that debt regardless.

136.   As a result of the conduct, action, and inaction of NCS, Plaintiff suffered from stress, anxiety, worry, fear, frustration, sleeplessness, nervousness, embarrassment, and humiliation, and the damages otherwise outlined in this Complaint. Plaintiff is in fear that the collection attempted by NCS will harm his credit reputation.

137.   Plaintiff is entitled to recover actual, statutory, compensatory, and punitive damages from NCS pursuant to the FDCPA.

138.   Plaintiff is entitled to recover reasonable attorney's fees and costs from NCS in the amount to be determined by the Court pursuant to the FDCPA.

WHEREFORE Plaintiff, SAGAR LALCHAND YADAV, respectfully requests that this Court award actual, statutory, compensatory, and punitive damages against Defendant, NATIONAL CREDIT SYSTEMS, INC., jointly and severally; award Plaintiff his attorneys' fees and costs; award pre-judgment and post-judgment interest at the legal rate; and grant all such additional relief as the Court deems appropriate.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, SAGAR LALCHAND YADAV, respectfully requests that this Court award judgment for actual, statutory, compensatory, and punitive damages against Defendants, EQUIFAX INFORMATION SERVICES LLC, TRANS UNION LLC, and NATIONAL CREDIT SYSTEMS, INC., jointly and severally; attorneys' fees and costs; prejudgment and post-judgment interest at the judgment rate; and such other relief the Court deems just and proper.

DATED this 22nd day of April 2024.

Respectfully Submitted,

*/s/ Octavio Gomez*
Octavio "Tav" Gomez, Esq.
Florida Bar #: 0338620
Georgia Bar #: 617963

Pennsylvania Bar #: 325066
The Consumer Lawyers PLLC
412 E. Madison St. Ste 916
Tampa, Florida 33602
Cell: (813) 299-8537
Facsimile: (844) 951-3933
Tav@theconsumerlawyers.com
Secondary Email:
Lisa@theconsumerlawyers.com

***/s/ Frank H. Kerney, III, Esq.***
Frank H. Kerney, III, Esq.
Florida Bar No.: 88672
Tennessee Bar No.: 035859
The Consumer Lawyers PLLC
412 E. Madison St. Ste 916
Tampa, Florida 33602
Telephone: 844.855.9000
Facsimile: 844.951.3933
Frank@TheConsumerLawyers.com
*Attorneys for Plaintiff*